## E. L. GOLDSTEIN *v.* SAMUEL HORT, N. R. LOWELL, and A. A. COHEN, Intervenor.

PLEDGE OF PERSONAL PROPERTY BY ONE NOT OWNING IT. — One assuming to own personal property, and pledging it, is estopped from afterwards asserting that he did not own it when he pledged it; and a subsequent acquisition of title by the pledgor, as between the parties to the contract, inures to the benefit of the pledgee, without any new delivery or ratification of the pledge.

RIGHT OF PLEDGEE TO RECOVER POSSESSION OF THE PLEDGE. — One who receives personal property in pledge from another who does not own it, but who subsequently, and while the pledge continues, acquires the title to it, may recover possession of the same from one who becomes possessed of it without right.

WARRANTY OF TITLE BY PLEDGOR. — The pledgor of personal property warrants the' title of the property pledged.

DELIVERY OF POSSESSION OF PROPERTY PLEDGED. — A delivery of possession of property pledged must be made to the pledgee in order to consummate the pledgee's right.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*E. B. Mastick*, and *John W. Dwinelle*, for Appellant, argued that one who pledged personal property on a new consideration then first advanced, warranted the title, and cited *Hibbard* v. *Johnson*, 19 John. 77; *Rew* v. *Barber*, 3 Cowen, 372; *Buckman* v. *Borman*, 3 E. D. Smith, 409; 12 Wend. 446; and 28 Barb., S. C. 533. They also argued that one who pledged property for a consideration then first advanced, but who had no title at the time, and acquired title subsequently, was estopped as well as those in privity with him, and particularly his subsequent vendees, from denying the title of the pledgee, and cited *Jackson* v. *Bull*, 1 John. Cases, 81; *Jackson* v. *Murray*, 12 John. 201; *Tyler* v. *Strong*, 21 Barb. 198; and *Crofoot* v. *Bennett*, 2 Comst., N. Y. 258.

*Doyle & Barber*, for Respondent Hort, argued that a pledge of personal property was void unless followed by some new act or ratification by the pledgor after he acquired title, and cited Story's Eq. Jurisp., Sec. 1,040 b., 1,021; *Lum* v. *Thornton*, 1 Mann. G. &. S. 379; 50 E. C. L. 379; *Moody* v. *Wright*,

13 Met. 17 ; *Gale* v. *Burnell*, 7 Ad. & E., N. S.; 53 E. C. L. 848, (850) ; *Jones* v. *Richardson*, 10 Metc. 492 ; *Otis* v. *Sill*, 8 Barb. 102, 110, 120 ; *Munsell* v. *Carew*, 2 Cush. 50 ; *Brainard* v. *Burton*, 5 Verm. 97, 99 ; and Broom's Legal Maxims, 319, (374.)

They also contended that no warrant of title was implied on the pledge of personal property except as between the vendor and vendee, and that as against a stranger the estoppel was not binding, and that the estoppel was merely personal as between vendor and vendee, and did not operate to prevent a subsequent buyer who acquired possession from asserting title, though derived from the same vendor, and cited 2 Smith's L. C. 620, note to *Doe* v. *Oliver ;* 4 Kent, (261,) 269, note ; *Pelletreau* v. *Jackson*, 11 Wend. 117 ; and *Jewett* v. *Lincoln*, 14 Maine, 116.

*A. A. Cohen*, in *pro. per.*, and *Delos Lake*, for Respondent Cohen, argued that Goldstein never acquired possession of the flour, inasmuch as it was in Martenstein's possession when Garthwaite undertook to deliver it to Goldstein ; and Garthwaite, having no title or possession, could not confer either upon Goldstein ; and that delivery of possession was essential to constitute a pledge, and that Goldstein therefore never became pledgee, and cited Story on Bail., Secs. 7, 287, 297 ; Bacon's Abr. Bail. (*b*) ; 2 Kent's Com. *581 ; Chitty on Con. *475, note 2 ; 1 Pars. on Con. 600 ; Jones on Bail. 84, 125 ; and Edwards on Bail. 193, 196.

By the Court, CURREY, C. J.:

Replevin for two thousand half sacks of flour of the alleged value of five thousand five hundred dollars. The defendant Hort answered, denying each and every allegation of the complaint. Cohen intervened, claiming the property and asking for a judgment that plaintiff take nothing by his action and for judgment against Hort, who had possession of the flour, for the recovery of the possession thereof, or for its value in

the sum of four thousand dollars in case a delivery of it could not be had. The plaintiff and the defendant Hort respectively controverted the matters contained in the complaint of the intervenor. The issues joined were tried before a jury, and upon the trial the plaintiff was, on motion of the defendants and intervenor, nonsuited and judgment thereupon entered against him. The plaintiff's appeal is from the judgment.

From the bill of exceptions contained in the transcript of the record it appears that on the 17th of January, 1863, one Henry Garthwaite proposed to borrow of the plaintiff eight thousand dollars, to be paid, with interest, in ninety days thereafter, and in consideration thereof to secure the sum so to be borrowed by a pledge of four thousand half sacks of flour on storage with A. S. Eldridge, a warehouseman at the Empire Warehouse in San Francisco ; and to consummate the matter Garthwaite made and delivered to the plaintiff his promissory note for eight thousand dollars, payable in ninety days after that date, and at the same time executed to him an assignment in writing of the four thousand half sacks of flour as collateral security for the payment of the note and interest, and also pointed out to the plaintiff the flour as his flour. This was done in the presence of one Loring, who was in charge of the warehouse at the time as the clerk of Eldridge, and who was authorized to act for his principal in receiving goods on storage and giving warehouse receipts for the same in the absence of Eldridge. By the request of Garthwaite a warehouse receipt was then made out by Loring, the clerk, and signed and delivered to the plaintiff. The receipt described the four thousand half sacks of flour, and acknowledged the receipt of the same on storage from the plaintiff. It was signed "A. S. Eldridge, per Loring." Upon receiving the note, the instrument of transfer and the storehouse receipt, the plaintiff counted the sacks of flour and placed the initial letters of his name on some of them, on the front side of the pile of sacks, and then delivered to Garthwaite the eight thousand dollars. At the time of this transaction the flour belonged to Martenstein & Co., and was on storage at the warehouse on their

account. But previous to this date, to wit, on the 12th day
of January, 1863, Martenstein & Co. had verbally agreed with
Garthwaite to sell to him two thousand half sacks of the flour
so belonging to them for five thousand one hundred and ninety-
five dollars, and made an entry in their books charging to
Garthwaite the price of the flour so agreed to be sold to him,
but no money was then paid therefor, nor was the flour or any
part of it then delivered, nor was there any note or memoran-
dum other than the entry on said books made of the sale. On
the 20th of the same January, Garthwaite paid Martenstein &
Co. for the two thousand half sacks previously purchased by
him as stated, and received from them an order on the ware-
houseman to deliver to him that number of the half sacks of
flour ; and a few days subsequently he paid Martenstein & Co.
for the other two thousand half sacks, and thereupon received
from them a like order on the warehouseman. The flour which
Garthwaite undertook to pledge to the plaintiff was the flour
which was so purchased of Martenstein & Co.

At the time this action was commenced, the defendant Hort
had possession of two thousand half sacks of the same flour
which the plaintiff had duly demanded of him. The two
thousand half sacks of flour were worth at the time the suit
was commenced five thousand five hundred dollars.

Assuming that Garthwaite had no interest in the flour at
the time he undertook to pledge it to the plaintiff, it is to be
ascertained whether, by force of his contract with the plain-
tiff, the attempted transfer in pledge became effective at the
time he did acquire the title thereto. The person who trans-
fers personal property in pledge as security for a debt must
own it, or at least have authority to deposit it in pledge.
(Edw. on Bail. 192.) A delivery of the possession of the
pledged property must be made to the pledgee, otherwise his
right cannot be consummated. When the property is of a
character or quality not capable of manual delivery, such as
debts and choses in action, the same may be pledged by a
written assignment or other effective means of transfer, as the
transfer of the capital stock of a corporate company by the

delivery of the scrip or certificate ; or of goods at sea by an assignment of the bill of lading, which is deemed equivalent to actual possession, because it is a delivery of the means of obtaining possession. (*Wilson* v. *Little*, 2 Coms. 447.)

In the consideration of this case it is important in the first place to understand the relations, rights and obligations of the respective parties to the contract entered into when the plaintiff loaned his money to Garthwaite and when the latter assumed to transfer to the former the flour as security for the money loaned. The plaintiff supposed he was receiving from Garthwaite a delivery of property belonging to him in pledge as security for the payment of the note then made and delivered. As between them, Garthwaite could not afterwards have been permitted to say he did not own the flour which he had assumed to transfer as his property. (Story on Bail. Sec. 291.) Had Garthwaite been the owner of the flour at the time, the transfer which he undertook to make of it was a sufficient transfer and delivery to invest the plaintiff with its possession and the right to retain it until his debt was paid. (*Wilkes* v. *Ferris*, 5 John. 325 ; 2 Kent's Com. 500.) By the contract Garthwaite impliedly stipulated that he owned the property which he assumed to pledge. Edwards, in his work on Bailments, at page one hundred and ninety-two, treating of the obligation which the law imposes on the pledgors in such cases, says : " To the extent of the interest which he undertakes to convey he in fact warrants his title as much as does the vendor on an absolute sale," and further, he says : " If he undertakes to pledge property that belongs to another, without his consent, he cannot afterward, so long as the owner refrains from claiming it, seek to have it restored, until his debt is discharged ;" and still further he states the rule of law to be that, though the pledgor " is not the owner at the time the pledge is made, if he subsequently acquire the property, by what title soever, his ownership will be deemed to relate back to the time of the contract, and the pledge will stand good." The doctrine here announced without reserve accords with the rule which

obtains in cases of absolute sales and transfers of personal property, to which the law annexes an implied warranty of title; and also in cases of conveyances of real property with covenants of seizin and warranty. And we can perceive no reason why the rule should not be applied in case of a pledge as well as in a case of an absolute sale and delivery of goods and chattels.

As we have observed, as between the parties to the contract the pledgor is not permitted to assert that he did not own the flour when he assumed that it belonged to him and undertook to pledge it as security for the money borrowed; and though he did not then own it, his subsequent acquisition of the title to it inured to the benefit of the plaintiff as pledgee, as of the time when Garthwaite borrowed the money and attempted to pledge the flour for the payment thereof.

There is nothing in the transcript of the record tending to show that the defendants or intervenor had any right to or interest in the property. At the time the plaintiff was nonsuited he had made out a case which entitled him to its submission to the jury for their verdict.

The judgment is reversed, and the cause remanded for a new trial.

Mr. Justice SHAFTER, having been of counsel, did not participate in this decision.


By the Court, CURREY, C. J., on petition for rehearing:

On petition of the defendant Hort for rehearing. The petitioning defendant answered denying each and every allegation of the complaint, and that is all. He does not claim to stand in the position of a subsequent purchaser in good faith for a valuable consideration of the property. He does not pretend in pleading that he has acquired any right to the property by purchase from Martenstein & Co.; nor from Garthwaite; nor does he claim to be an attaching creditor. As the case stands

upon the record, the only question is, did the plaintiff have the right to the possession of the property at the time the action was commenced as between him and Garthwaite, or a third person who became possessed of it without right. Garthwaite assumed to pledge it before he owned it and while it was in the warehouse in possession of the warehouseman as the agent of Martenstein & Co. Garthwaite, with the wrongful concurrence of Loring, the warehouseman's clerk, attempted to make a delivery of the flour to the plaintiff, who upon the strength of what was done loaned to Garthwaite eight thousand dollars. Now it is said on petition for rehearing that the delivery was ineffectual because the property did not belong to Garthwaite, and that a new delivery after the latter became the owner of it, or a taking possession of it by the plaintiff after that time, was necessary before it could become a pledge in the hands of the plaintiff. Counsel say : " By the common law a sale of goods, whether absolute or conditional, not belonging to the vendee at the time, does not pass the legal title, nor will it pass thereby until the vendor acquires title, and thereafter ratifies or gives effect to the original invalid sale by some new act intended to vest title in the vendee. The taking possession of the property by the vendee, with the sanction of the vendor, after such title has been acquired, will, according to the preponderance of authority, be a sufficient ratification for that purpose." In the very nature of things the vendor must have the title before he can transfer it ; but if he undertakes to transfer the title to personal property which he does not own, in a manner that would be effectual if he owned it, and afterwards acquires the title, he is estopped from saying the sale was invalid and void because he had no title when he assumed to own and transfer it. This is a well settled doctrine of the law ; and if it by any means appears in such a case that the vendor made a contract of sale of personal property and placed it in the possession of the vendee, and afterwards, for the first time, obtained the title to it, we apprehend a new delivery or other expressed act of ratification of what he had attempted to do

would not be necessary to invest the vendee with the title. To require, under such circumstances, a new delivery or ratification of the sale, would be to require a vain thing. The vendee, being in possession, is entitled to retain the property after the vendor acquires the title, whether the vendor sanctioned the original transfer or otherwise. The same rule applies to cases of pledges.

Many of the authorities to which the defendant has referred, in his petition for a new hearing, arose upon contracts of mortgage or sale, unaccompanied by a delivery of the property, and consequently are distinguishable from this case. We deem it unnecessary to examine them in detail. We are of the opinion the judgment heretofore pronounced should stand.

Rehearing denied.