[Civ. No. 3033.   First Appellate District, Division Two.—November 6, 1919.]

T. SPELLACY and MASCOT OIL COMPANY (a Corporation), Respondents, v. C. S. YOUNG, Appellant; R. W. KEMP et al., Cross-complainants and Respondents.

[1] EXECUTION SALES—LACK OF ACTUAL NOTICE—RELIEF.—Where the execution was properly issued and the sale legally and fairly conducted, an execution sale will not be set aside upon a mere showing that the judgment debtor and his attorney, being far removed at the time from the place where the sale was held, did not actually know that judgment had been entered or that execution had issued or the sale noticed.

[2] ID.—FRAUDULENT WITHHOLDING OF KNOWLEDGE—RELIEF—STATUTE OF LIMITATIONS.—Under subdivision 4 of section 338 of the Code of Civil Procedure, an action to set aside an execution sale upon the ground of fraud in keeping knowledge of the sale from the judgment debtor and his attorney must be commenced within three years from the discovery of the fraud.

[3] APPEAL—ASSIGNMENTS OF ERROR.—Assignments of error merely noted without any citation of authority or argument, beyond the bare statement that error was made, will not be considered on appeal.

[4] ESTOPPEL—APPARENT OWNERSHIP—BONA FIDE PURCHASE.—Where a party clothes another with the *indicia* of ownership of shares of stock, he cannot claim as against a *bona fide* purchaser that the apparent owner had a limited title only, when knowledge of the limitation has not been conveyed to the purchaser.

---

4. Effect of putting paper or securities transferable by delivery or indorsed or assigned in blank into another's possession, to estop owner as against purchaser in good faith, note, 29 L. R. A. (N. S.) 252.

[5] PLEDGE—RENEWAL OF INDEBTEDNESS—COLLATERAL NOT AFFECTED. Where shares of stock are pledged as security for the payment of a promissory note, and thereafter a new note, together with a written agreement extending and renewing the indebtedness for the purpose of barring the running of the statute of limitations and continuing the security of the collateral given on the execution of the original note, is executed and delivered, the security is not then devoted to a new or different purpose, but is held to secure payment of the same original debt.

APPEAL from a judgment of the Superior Court of Los Angeles County. Fred H. Taft, Judge. Affirmed.

The facts are stated in the opinion of the court.

Joseph J. Bullock and James Donovan for Appellant.

Davis, Kemp & Post and A. A. De Ligne for Respondents.

NOURSE, J.—This is an appeal in an action in interpleader instituted by the plaintiffs Spellacy and Mascot Oil Company, a corporation, against various defendants to determine the title to certain shares of stock of said corporation. The defendant C. S. Young answered and cross-complained against S. Wright Jewett, R. W. Kemp, and E. L. Foster, attacking their title to nineteen thousand four hundred shares of said stock upon the ground that the sheriff's sale through which they obtained title was illegal and void. The defendant W. R. Williams, superintendent of banks of the state of California, answered and cross-complained against the said C. S. Young, attacking his title to two thousand five hundred shares of the stock of said corporation as having been deposited with the Kern Valley Bank, a defunct banking corporation, by E. L. Foster, as security for the note of said Foster to the bank. An assignment, absolute in form, from Young to Foster was turned over to the bank when the note was made. Separate judgments supported by separate findings were entered in favor of the defendants Jewett, Kemp, and Foster against C. S. Young, and in favor of the defendant W. R. Williams, as successor in interest to the Kern Valley Bank, against the same party. The case is before this court upon appeals taken from both of said judgments and presented on the same record.

The material facts out of which the interpleader suit originated are these:

In an action between Young and Spellacy, judgment was given in favor of Young to the effect that Spellacy held certain shares of stock in the Mascot Oil Company in trust for Young. In that proceeding Young was represented by E. L. Foster, an attorney at law, and upon the termination of the proceeding suit was instituted by said Foster against Young to recover the sum of thirty-five thousand dollars for professional services in connection with the litigation. At the time of the institution of the latter suit an attachment was attempted to be levied upon the interest of Young in the stock which in the previous litigation had been held to be his. Thereafter, judgment was rendered in favor of Foster and against Young for something less than eight thousand dollars, execution was immediately issued, and nineteen thousand four hundred shares of the stock of the corporation were sold to Kemp, one of the attorneys for Foster in that proceeding, for $1,940. Immediately thereafter a stay of execution was procured and an appeal filed, judgment being affirmed by the supreme court on March 14, 1916. (*Foster* v. *Young*, 172 Cal. 317, [156 Pac. 476].) About the time the notice of appeal was filed, Young, through his attorney, made a motion in the superior court to set aside the execution and sale upon the ground that neither the defendant nor his attorney had been given notice of the presentation of the findings or of the entry of the judgment. This motion being denied, an appeal was taken from the order upon a bill of exceptions and heard with the appeal from the judgment. Upon this phase of that case the supreme court said (172 Cal. 322, [156 Pac. 478]): "The motion as made to vacate and set aside this sale was not based upon any claim of invalidity as to the acts of the sheriff in selling the stock, but upon the sole ground that notice of the making of said findings of fact, and the rendition and entry of the judgment upon which said execution issued, was never at any time served upon defendant, and that he had no notice thereof." Upon the grounds then urged the supreme court affirmed the order denying the motion to set aside the sale. This interpleader suit was instituted in August, 1912, the sale complained of was made in April of that year, and the motion above referred to was

made immediately thereafter. In September, 1912, the appellant herein filed an answer setting up the alleged irregularities in the attachment and execution proceedings. However, after the opinion in *Foster* v. *Young,* was rendered, Young filed an amended and supplemental cross-complaint in the pending action, wherein the sale was attacked upon the grounds that neither Young nor his attorney had any notice that any execution had issued, and that the cross-defendants Foster and Kemp had so arranged said sale that neither Young nor his attorney should know of the same until it had been completed. This amended and supplemental cross-complaint was filed May 23, 1916, more than four years after the sale was conducted. In the amended and supplemental cross-complaint it is alleged that the cross-complainant Young and his attorney learned of this sale upon April 3, 1912, two days after the sale had taken place. No reasons were given for the long delay in seeking relief. On the trial of the pending action the court refused to admit any testimony in support of this amended and supplemental cross-complaint upon the grounds that it did not state facts· sufficient to constitute a cause of action and that the relief was barred by the statute of limitations. If the court was correct upon these rulings, other points raised by appellant upon this appeal do not require consideration.

[1] The amended cross-complaint sets forth the institution of the action in which the attachment was issued, service of the attachment, the entry of judgment, the sale by the sheriff, the offer to redeem the stock surreptitiously bid in by Kemp, and the offer to pay the entire judgment after it became final following the opinion of the supreme court. The only facts alleged upon which might be predicated any claim for equitable relief are those relating to want of notice of the execution and sale on the part of Young and his attorney. It is not alleged that the notice required by the statute was not in fact given, but merely that Young and his attorney, being far removed from the city of Los Angeles at the time, did not actually know that said judgment had been entered or that the execution had issued or the sale noticed. It is too clear for argument that these allegations, standing alone, do not support a claim for equitable relief, if, as was to be implied from the

want of attack, the execution was properly issued and the sale legally and fairly conducted.

[2] The amended cross-complaint attempts to set up a plea for relief from fraud. Such relief is barred within three years from the discovery of the fraud under the provisions of subdivision 4, section 338, of the Code of Civil Procedure. The amended cross-complaint was not filed until after the expiration of four years from the date of the discovery of the fraud. The original cross-complaint filed by Young against the same parties set up facts relating to this sale in support of a claim that the action taken by the sheriff did not comply with the requirements of the statute relating to attachments and executions. This claim, however, was abandoned upon the filing of the amended and supplemental cross-complaint and an entirely new cause of action was therein attempted to be stated, to wit, one based upon fraud. This cause of action being barred by the statute, the trial court properly refused to admit evidence in support of it.

The judgment in favor of Jewett, Kemp, and Foster, therefore, must be affirmed.

The appeal from the judgment in favor of the superintendent of banks presents a case similar to the one just discussed in that the appellant has so delayed seeking a remedy that the court is without power to give him any relief. The court, however, does not on either appeal approve the methods of those lawyers who are responsible for appellant's predicament.

The facts material to the opinion are that on the day the judgment was rendered in favor of Young and against Spellacy, decreeing that Young was the owner of twenty-one thousand nine hundred shares of the capital stock of the Mascot Oil Company, E. L. Foster, the attorney for Young in that litigation, procured from his client a written assignment to himself of two thousand five hundred shares of the stock of said company in the following terms:

"Los Angeles, Cal., Sept. 5, 1910.

"I hereby sell, assign and transfer unto E. L. Foster 2,500 shares of the capital stock of the Mascot Oil Company.

"(Signed)   C. S. YOUNG.

"Witness: G. B. HOWELL."

This assignment was made out in duplicate, Young retaining one and giving the other to Foster. Foster took his assignment to the secretary of the Oil Company, who indorsed thereon the following: "I hereby acknowledge receipt of a copy of this transfer." The secretary signed this with the name of the Mascot Oil Company, by himself as secretary, and affixed the impression of the seal of the company. Thereafter Foster returned to Young and indorsed upon the duplicate copy in Young's possession the following: "This is to be redeemed at any time. Stock is to be used as collateral security for the loan at the Kern Valley Bank." This was signed by Foster and witnessed by a disinterested party. Foster then presented to the Kern Valley Bank the copy which he retained in his possession without, however, indorsing thereon the statement relating to the right of redemption which he had indorsed upon the copy left with Young. Using his assignment as security, he executed a note to the Kern Valley Bank for the principal sum of $2,250 and transferred in writing and delivered to the bank the assignment which he had received from Young. Two days thereafter Young wrote to the president of the bank that the assignment given by him to Foster was for the purpose of obtaining a loan of one thousand five hundred dollars, and no greater amount, and that Young reserved the right to redeem as shown by the inclosed copy of the assignment which Foster had left with him. On the same day Young wrote to the secretary of the Mascot Oil Company, notifying him that the stock was not to be issued without written authorization from himself. A few days thereafter the secretary wrote to Young, notifying him that the assignment left with him by Foster did not contain the notation signed by Foster upon the copy retained by Young. The following day Young notified the president of the bank of his revocation and cancellation of the assignment and forbade any loan to Foster thereon.

This all occurred between the fifth and twelfth days of September, 1910. Foster's note was not paid when, on August 6, 1914, which was just prior to the running of the statute of limitations upon the note, he executed and delivered a new note, together with a written agreement to Williams, as successor in interest to the bank, which had failed in the meantime, extending and renewing the indebtedness

for the purpose of barring the running of the statute of limitations and continuing the security of the collateral given on the execution of the original note. This action was instituted in the latter part of August, 1912. The cross-complaint of Williams was filed January 10, 1913. It was alleged that the stock was being held by Williams, as superintendent of banks, as collateral security for the payment of $1,750, the balance then due upon the original note. No legal steps were taken by appellant to cancel the original assignment, and no offer was made to redeem the stock, but appellant relied upon his claim, based upon the oral agreement between Foster and himself, that the stock was to be used solely for the loan of one thousand five hundred dollars, five hundred dollars of which was to be given to Young and the remainder to Foster. Upon the trial the court found against Young upon this defense. The testimony was directly in conflict and the finding cannot be disturbed.

Appellant cites as error the ruling of the court in admitting in evidence the assignment of Foster to the bank, on the ground that it had no binding effect upon appellant because the original paper was given to Foster to be used as collateral for a loan of one thousand five hundred dollars and afterward canceled, and that the use of the stock to secure the extension of the loan was not authorized by Young. This objection went to the weight of the evidence and not to its admissibility. The assignment was admissible as evidence of what the parties acted upon. What subsequently occurred could be shown by other evidence. The same may be said as to the objection to the admission of the new note on the ground that no consideration was given. The writing imported a consideration, and if none was given that fact must be shown by other evidence.

[3] Other assignments of error are made covering rulings of the court and findings of fact and conclusions of law, but the assignments are merely noted without any citation of authority or argument beyond the bare statement that error was made. This court is not required to consider points so presented. (*Scott* v. *Times-Mirror Co.,* 181 Cal. 345, [184 Pac. 672].) [4] It is argued that as a certificate of stock is not a negotiable instrument, the assignment given to Foster by Young is not negotiable, and hence the bank took no better title than Foster had. When a party clothes

another with the *indicia* of ownership of · shares of stock, he cannot claim as against the *bona fide* purchaser that the apparent owner has a limited title only, when knowledge of the limitation had not been conveyed to the purchaser. (*Fowles* v. *National Bank of California,* 167 Cal. 653, [140 Pac. 271].)   Thus, when the assignment was taken as security for the original loan, the bank was not charged with knowledge of the limitation placed upon it by Young or of any secret agreements made between Young and Foster relating to the use which might be made of such assignment. [5]   When the new note was given in August, 1914, the old debt was not canceled, but the new note was merely evidence of the old and was taken to avoid the bar of the statute of limitations.   The security was not then devoted to a new or different purpose, but was held to secure payment of the same original debt.

For the reasons given the judgment in favor of Williams, as superintendent of banks, is affirmed.

Langdon, P. J., and Brittain, J., concurred.