[Civ. No. 10889. First Appellate District, Division Two.—September 27, 1939.]

BEN SALOMON, Appellant, v. A. I. ELLIS et al., Defendants; I. ZELLERBACH, Respondent.

Ackerman, Wayland & Mathews for Appellant.

Pillsbury, Madison & Sutro, and Philip S. Ehrlich, for Respondent.

NOURSE, P. J.—This action was instituted by the plaintiff, Salomon, to recover possession of voting trust certificates representing 920 shares of the cumulative class A common stock of National Automotive Fibres, Inc., to recover $345 allegedly received by defendants as dividends on said stock, and to recover damages caused by reason of the detention of said stock. Defendant Zellerbach filed an answer and cross-complaint in which he asserted a lien upon the stock for certain sums advanced at the request of Ellis, a codefendant. The trial court gave judgment that plaintiff take nothing by reason of his complaint; that defendant Zellerbach has a valid lien upon the voting trust certificates as collateral security for the repayment of the sum of $31,326.44 with interest from June 1, 1936, and the further sum of $17,578.27; that defendant and cross-complainant Zellerbach recover judgment against cross-defendant Ellis but take nothing by reason of his cross-complaint against cross-defendant Salomon; and that an accounting be had between plaintiff Salomon and cross-defendant Ellis. Plaintiff and cross-defendant Salomon has appealed upon a bill of exceptions from that portion of the judgment which is in favor of the defendant and cross-complainant Zellerbach.

In November, 1928, Salomon and Ellis opened an account with the brokerage firm of Manheim, Dibbern & Co. for the purpose of buying and selling securities on margin. The account was carried in the name of "A. I. Ellis and/or B. Salomon". Ellis also had three other accounts with said brokerage firm, one in his own name, one in his wife's name, and a third in his nephew's name. With respect to the "A. I. Ellis and/or B. Salomon" account, with which we are chiefly concerned, it was agreed that Ellis should have full control or disposition of all shares of stock in said account. Moreover, it was agreed that checks from the brokerage firm should be made payable to Ellis, and checks for profits were so delivered to Ellis, who cashed them and gave his check for one-half to Salomon.

In September and October, 1929, Salomon and Ellis purchased on margin, voting trust certificates representing 1840 shares of the cumulative class "A" common stock of National Automotive Fibres, Inc., which were carried by Manheim, Dibbern & Co., in the "A. I. Ellis and/or B. Salomon" account. In October, 1929, approximately $20,000 was needed to properly margin all of Ellis' accounts, including the one in which Salomon was interested. Neither Ellis nor Salomon was able to furnish this amount, and Ellis testified that, after leaving the broker's office, he told Salomon that he would try to borrow the necessary sum from defendant Zellerbach. This conversation was denied by Salomon when he testified. However, Ellis approached Zellerbach, who, although he refused to loan Ellis the money, agreed to guarantee Ellis' account with Manheim, Dibbern & Co. To that end, Zellerbach directed his son to telephone Manheim, Dibbern & Co. and so inform them. This was done and Manheim, Dibbern & Co. acknowledged in writing this guarantee. It should be pointed out that Zellerbach was not informed that Ellis had four accounts with said brokerage firm and was not informed that Salomon had an interest in any of the accounts. Zellerbach testified that he did not know of Salomon's interest in any of the accounts, did not know that Ellis had more than one account, and would not have guaranteed an account in which Salomon had an interest. Zellerbach's guarantee was unlimited in amount. Ellis testified that he informed Salomon of the guarantee by Zellerbach at the time it was made. Salomon denied that he was so informed.

In November of 1930, Manheim, Dibbern & Co. made a demand upon Zellerbach under his agreement to guarantee Ellis' account. Rather than pay the amount demanded, Zellerbach and Ellis agreed that the account should be transferred to J. Barth & Co., another brokerage firm with which Zellerbach did business. Prior to this transaction, all four of Ellis' accounts, including the "A. I. Ellis and/or B. Salomon" account, were incorporated into one account standing in the name of "A. I. Ellis". This account was transferred to J. Barth & Co., who paid Manheim, Dibbern & Co. in full. Zellerbach again guaranteed the account and deposited certain securities with J. Barth & Co. to secure his guarantee. At the time of this transaction, which was approximately November 13, 1930, Ellis executed two written instruments,

the first providing that the stock in his account at J. Barth & Co. should be collateral security for Zellerbach's guarantee of the account and for Zellerbach's guarantee of Ellis' note in the sum of $23,500 payable to the Wells Fargo Bank & Union Trust Co., and the second being an order upon Barth & Co. to deliver to Zellerbach all the stock standing in Ellis' name on its books.

While the A. I. Ellis' account, including the 1840 shares of National Automotive Fibres stock, existed at·J. Barth & Co. the following transactions occurred: In response to a call for margin on March 30, 1932, Zellerbach paid J. Barth & Co. $15,000. Shortly · before this call was made, Ellis sold 220 shares of National Automotive Fibres stock and bought 145 shares of California Cotton Mills stock. A further call for margin was made June 6, 1932, and Zellerbach paid $11,000. In August, 1935, Ellis sold 620 shares of National Automotive Fibres, Inc., stock and the proceeds were used to completely liquidate the debit balance of the A. I. Ellis account. There remained in the account 1,000 shares of National Automotive Fibres which were then delivered by J. Barth & Co. to Zellerbach.

Salomon knew in January, 1931, that the account had been transferred to J. Barth & Co., and, in response to his request, Ellis wrote him a letter, dated January 29, 1931, in which Ellis acknowledged that Salomon owned a one-half interest in 1840 shares of National Automotive Fibres. Beginning in 1933 Salomon made repeated demands upon Ellis for the delivery of the stock. But he made no inquiries at J. Barth & Co., and Zellerbach did not learn of any claim made by Salomon until some time in 1934, when Salomon made certain demands upon Ehrlich, attorney for Zellerbach.

The judgment gives Zellerbach a lien upon the voting trust certificates to secure the repayment of the sum of $31,326.44 representing the balance owed Zellerbach by reason of his advances made pursuant to his guarantee. It further accords him a lien to secure the sum of $17,578.27 representing the balance due upon a note executed by Ellis in favor of the Wells Fargo Bank & Union Trust Co. This indebtedness was incurred by Ellis early in the year 1928 in connection with the acquisition of a second mortgage upon an apartment house in Los Angeles. This indebtedness had also been guaranteed by Zellerbach. By means of the pledge agreement whereby Ellis pledged the shares of stock in

the account to secure Zellerbach on the sums advanced under his guarantee of the account, the shares of stock were also pledged as security for this guaranty by Zellerbach.

We are of the opinion that there was a valid pledge of the securities to Zellerbach at the time of the transfer from Manheim, Dibbern & Co. to J. Barth & Co. Appellant contends that the securities were nonnegotiable and must be treated as personal property. Conceding this to be true, appellant's other contentions, namely, that there was no delivery of the securities and that Ellis exercised full dominion over them, remain without merit. The securities were of such a nature as to be incapable of manual delivery and therefore might be pledged by written assignment. (*Joint Pole Assn.* v. *Steele*, 213 Cal. 233 [2 Pac. (2d) 335]; *Hall* v. *Cayot*, 141 Cal. 13 [74 Pac. 299]; *Brewster* v. *Hartley*, 37 Cal. 15 [99 Am. Dec. 237]; *Goldstein* v. *Hort*, 30 Cal. 372; *Ahern* v. *Tulare Lake Canal Co.*, 115 Cal. App. 93 [1 Pac. (2d) 490]; 21 Cal. Jur., p. 313; 6 Cal. Jur., p. 816.) It was therefore not essential that the shares be delivered to Zellerbach. The record discloses only two acts of dominion in respect to the property pledged. On December 18, 1930, Ellis sold 220 shares of National Automotive Fibres stock and purchased 145 shares of California Cotton Mills stock. Far from being without the consent of Zellerbach, it appears that he knew of the transaction and in fact, the shares of California Cotton Mills stock were purchased directly from him. The only other sale of shares occurred in August, 1935, when 620 shares of National Automotive Fibres stock were sold to pay off the indebtedness owed J. Barth & Co. After this transaction occurred, the remaining shares were delivered to Zellerbach. It is apparent that there was no such exercise of dominion by Ellis as would invalidate the pledge.

In our opinion, the rights of the parties are governed by section 2991 of the Civil Code which provides, "One who has allowed another to assume the apparent ownership of property for the purpose of making any transfer of it, cannot set up his own title, to defeat a pledge of the property, made by the other, to a pledgee who received the property in good faith, in the ordinary course of business, and for value." (See, also, *Grange* v. *Judah Boas Co.*, 60 Cal. App. 484, 492 [213 Pac. 712]; *Wenban Estate, Inc.*, v. *Hewlett*, 193 Cal. 675, 700 [227 Pac. 723]; *Lynch* v. *International Banking Corp.*, 68 Cal. App. 432 [229 Pac. 968]; *Spellacy*

v. *Young,* 44 Cal. App. 174 [186 Pac. 368]; Civ. Code, sec. 3543.) The record discloses that Salomon permitted the shares to stand in an account under Ellis' name, and that he authorized Ellis to transfer them. It shows that Ellis had full authority to make all sales and purchases in regard to the account. While it is true that at the time Zellerbach first guaranteed the account it stood in the name of "B. Salomon and/or A. I. Ellis" this fact was never ascertained by Zellerbach and there is evidence that Salomon and Ellis purposely refrained from notifying Zellerbach of any interest that Salomon had in the shares for fear that Zellerbach would not guarantee the account. There is evidence that Salomon knew of and consented to the consolidation of the account in an account standing in Ellis' name and that he knew of and consented to the transfer of the account to J. Barth & Co. It further appears that Salomon knew that Zellerbach had guaranteed the account. While there is no direct evidence that Salomon knew of the pledge of the stock to Zellerbach, Salomon himself testified that he knew that he could not obtain the stock without the consent of Ellis and Zellerbach, and, in explaining a letter written by Ellis at his request in which Ellis acknowledged Salomon's interest in the stock, Salomon testified that he wanted the letter to show his interest in the event that anything happened to Zellerbach. The ready inference is that Salomon knew that Zellerbach had an interest in the stock. There is nothing in the record which indicates that Zellerbach acted other that in good faith and in the ordinary course of business. That he parted with value is patent. Under all these circumstances Salomon cannot now assert his title against Zellerbach.

What has just been said is equally true of both the pledge to secure Zellerbach on his guarantee of the account as it stood with J. Barth & Co. and the pledge to secure Zellerbach on his guarantee of Ellis' debt to the Wells Fargo Bank and Union Trust Co. While the latter debt arose out of a transaction in which Salomon had no interest, the enforceability of the pledge rests not upon the fact that he had an interest in the account but upon his conduct as above enumerated. Civil Code, section 2991, applies with equal force both where the person who has apparent ownership pledges the property to secure his own debt and where

the true owner has some interest in the transaction out of which the pledge arose.

■ Appellant contends that there is no evidence to support certain findings of fact and that the evidence is inherently improbable in regard to the guarantee of the account when it stood on the books of Manheim, Dibbern & Co. The evidence is not inherently improbable when it is remembered that Zellerbach and Ellis were friends and business associates of long standing. It speaks rather of the high degree of confidence which Zellerbach had in the integrity of Ellis. Conceding that there is no evidence that Salomon and Ellis were partners, the finding that they were is not essential to the support of the judgment. In other respects, the findings of the court are amply supported by the evidence.

■ Appellant further contends that the guaranty of the account while it stood on the books of Manheim, Dibbern & Co. was oral and therefore unenforceable. (Civ. Code, secs. 1624, 2793, 2794.) While it was oral, it was merely voidable and not void (*O'Brien* v. *O'Brien*, 197 Cal. 577 [241 Pac. 861]), and in this case was fully executed. Therefore, the fact that the guaranty was oral can have no effect on the validity of the judgment.

■ The trial court's finding that appellant's cause of action is barred by the statute of limitations (Code Civ. Proc., sec. 338, subd. 3) is also attacked by appellant. This point need not be considered, because, even if the cause of action is not barred, a judgment in favor of Zellerbach was proper under the facts proved.

The portions of the judgment from which the appeal is taken are and each is hereby affirmed.

Sturtevant, J., and Spence, J., concurred.