**KENT–REESE ENTERPRISES, INC.,
Raymond Douglass and Robert
Reese, Appellants,**

v.

**Walter HEMPY, Trustee of Big Boy Markets, Inc., Bankrupt, Appellee.**

**No. 20845.**

United States Court of Appeals
Ninth Circuit.

May 29, 1967.

C. Wadsworth White, Oakland, Cal., for appellants.

Gerald N. Hill, William Kelly, Rothschild & Phelan, San Francisco, Cal., for appellee.

Before JONES, Senior Judge, United States Court of Claims *, and DUNIWAY and ELY, Circuit Judges.

JONES, Senior Judge:

This is an appeal from a judgment of the United States District Court for the

---

* Sitting by designation of the Chief Justice.

Northern District of California which held that certain transactions between appellants Douglass, Reese, and Kent-Reese Enterprises, Inc. (Kent-Reese); and Big Boy Markets, Inc. (Big Boy), now bankrupt, were preferential transfers in violation of Section 60 of the Bankruptcy Act, 30 Stat. 562 (1898), (amended by 64 Stat. 24 (1950)), 11 U.S.C. § 96 (1964). The suit was brought by Walter Hempy, Trustee of Big Boy.

Jurisdiction was conferred on the district court by 28 U.S.C. §§ 1331 and 1334; jurisdiction is conferred on this court by 28 U.S.C. §§ 1291 and 1294.

The facts as found by the district court are not in dispute. The contest is over the conclusions of law reached by the trial judge.

The findings of the district court are set out in detail in the record. In brief they are as follows:

Douglass and Reese were the principal owners of Kent-Reese and Big Boy. Douglass was President and a director of Kent-Reese and Big Boy. Reese was Vice President and a director of the former and Secretary-Treasurer and a director of the latter.

At some time prior to November 1, 1959, Douglass and Reese placed with Big Boy $30,700 for the purchase of preferred stock in that corporation. As of the above date Big Boy was unable to secure a permit from the state authorities for the issuance of such stock, but it was still continuing its efforts to secure approval. Also prior to November 1, 1959, Kent-Reese executed a promissory note in the amount of $54,000, with Big Boy as payee.

On November 1, 1959, a three-way agreement was reduced to writing, by the terms of which: (1) Douglass and Reese agreed to let Big Boy retain the $30,700 on a demand-loan basis; (2) Kent-Reese agreed to act as guarantor of the loan; (3) Big Boy agreed to let Kent-Reese apply any sums it had to pay as guarantor to the balance owing on the $54,000 promissory note.

The primary issue in this case is the effect of the three-way agreement on the promissory note.

In October 1960, Big Boy filed a petition in bankruptcy. The balance owing on the $54,000 promissory note at that time was $31,000. Soon thereafter Douglass and Reese made demand on Kent-Reese for the $30,700. Douglass and Reese did not file claims against the bankrupt estate for the $30,700, stating they felt Kent-Reese's guarantee was sufficient protection. Kent-Reese recognized obligations to Douglass and Reese for $30,700 and, correspondingly, considered its obligation to Big Boy under the promissory note discharged. The record does not disclose, either at the time the three-party written agreement was entered into, or at the time Kent-Reese recognized obligations to Douglass and Reese for $30,700, whether there was a physical transfer of the promissory note from Big Boy to Douglass and Reese, or where the note lodged at any time during these transactions.

The Trustee in bankruptcy, however, refused to recognize the discharge and made demand on Kent-Reese for the amount owing on the note. The Trustee claimed that the Kent-Reese obligation was transferred from Big Boy only when Kent-Reese paid Douglass and Reese and thereupon attempted to cancel the note. Since this transfer was within 4 months of the petition in bankruptcy, the Trustee maintains it was an unlawful preference in violation of Section 60 of the Bankruptcy Act.

Appellants' argument is that the written agreement of November 1, 1959, itself constituted a transfer of Big Boy's asset—the rights under the promissory note—to appellants; since this transfer occurred more than 4 months prior to the petition in bankruptcy, it created a preference not voidable under Section 60. Appellants cite First Nat'l Bank of Redlands v. Consolidated Lumber Co., 16 Cal. App. 267, 116 P. 680 (1911), which distinguished between a contingent liability and a right contingent upon the happening of an event to enforce an existing

liability. In the former there is no liability until the happening of the contingency, while in the latter a liability exists, but is unenforceable until the event occurs. Appellants maintain that at the time of the written agreement, Kent-Reese, and Douglass and Reese as third-party beneficiaries, had a lien upon the money which Kent-Reese owed to Big Boy. Appellants characterize this lien as a present right contingent only on Big Boy's default, which subsequently occurred.

The Trustee replies by citing Aulick v. Largent, 295 F.2d 41 (4th Cir. 1961), a case relied on by the district court. In *Aulick* the bankrupt's creditor agreed to accept bankrupt's personal note because the note was endorsed by a third party. The third party took a pledge of bankrupt's stock to secure its endorsement. Upon petition in bankruptcy within 4 months, the creditor recovered from the third party, but the Trustee was able to recover from the creditor the value of the stock pledged. Here, as in *Aulick,* all parties knew of the bankrupt's insolvency at the time of the transfer. Appellee here admits a distinction in that in *Aulick* the pledge as well as the transfer was made within the 4-month period.

Nevertheless, the Trustee argues that this case is on all fours with *Aulick* because, although the written agreement here was entered into more than 4 months prior to the petition in bankruptcy, the transfer of Big Boy's obligation was never perfected, as that term is defined in Section 60(a) (2) of the Bankruptcy Act, 11 U.S.C. § 96(a) (2):

> * * * a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee. * * * If any transfer of real property is not so perfected against a bona fide purchase, or if any transfer of other property is not so perfected against such liens by legal or equitable proceedings prior to the filing of a petition initiating a proceeding under this Act, it shall be deemed to have been made immediately before the filing of the petition.

The Trustee's position is that the promissory note in the hands of Big Boy was at all times property which could have been sold or transferred to others or attached, with superior liens thereby established.

The Trustee is supported by the district court which held that the November 1, 1959, agreement did not effectuate a present assignment or transfer of the promissory note concurrently with the execution of the agreement and that any such transfer was made immediately before the filing of the petition in bankruptcy. In so holding the district court followed the clear wording of the statute.

We agree with the district court.

The central point of dispute is the question of when Big Boy transferred the promissory note. Prior to the three-way written agreement, Big Boy obviously had not parted with an interest in the note. The effect of the agreement was to make Kent-Reese's interest in the note contingent on a default on the loan by Douglass and Reese to Big Boy. This was not sufficient to effect transfer at the time of the agreement. Until Big Boy defaulted, an event which occurred within 4 months of the petition in bankruptcy, the transaction was not complete.

In any event, regardless of how the contract is treated as between the two corporations and the two controlling officers and directors, it could not, on the facts disclosed by this record, be binding on general creditors dealing with Big Boy.

Douglass and Reese were controlling directors and officers of both corporations. They knew the financial condition of Kent-Reese, the maker of the note, and of Big Boy, the payee of the note. They evidently wanted to keep Big Boy afloat as a going concern. They permitted Big

Boy to retain the $30,700 for a year after signing the agreement in an apparent effort to keep the company in operation. That is to their credit.

There is however another side to the coin. While the record does not show, it is possible that if Douglass and Reese had demanded the return of the $30,700 soon after November 1, 1959, it might have brought about immediate financial difficulties for Big Boy and possibly earlier bankruptcy. In that event they would not have been in any position to make plausible claims to be treated as secured creditors. The course they adopted evidently seemed to them and their lawyers as the best method of procedure. This is evidenced by the drawing of the 1959 instrument. This is not meant as a criticism of Douglass and Reese. Neither side has questioned their good faith.

But it is as natural for a man to look after his own interests as it is for the sparks to fly upward. That is true in law as in life. Douglass and Reese were in charge of both corporations. They could move things around like moving the sun and moon around in a theater. The writer recalls the instance of a member of the Naval Committee of The Congress who was also an official of his party. On an important question he had apparently cast a vote contrary to the established policy of his party. He was in a serious contest for re-election. He was twitted by his colleagues about not staying in line. His reply: "When a man is on a ship in a terrific storm, and the ship is leaking, when the water reaches the second deck it is every man for himself."

This is but a variation of the ancient law of self-defense. But it is a trait or an instinct that runs deep in human nature. That is the reason why governments have found it necessary to establish laws and rules of conduct that protect the rights of all concerned. The law is based on reason. It is the product of human experience. It is the result of continuous efforts of bright minds through the years to formulate rules that will promote justice between man and man in their dealings with each other.

That is the reason that California and federal law provide for a period prior to the filing of a petition in bankruptcy during which transfers of the bankrupt's assets cannot be made to the detriment of other creditors. During the year following November 1, 1959, who knows whether some of the other creditors or dealers with Big Boy might have refrained, or taken earlier action, if they had known of the particular arrangement with appellants which had been made.

In any event, in the circumstances, the facts and the law support the findings and conclusions of the trial court.

Section 3440 of the California Civil Code, which was in effect on November 1, 1959, provides that:

Every transfer of personal property and every lien on personal property made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery followed by an actual and continued change of possession of the things transferred, is conclusively presumed fraudulent and void as against the transferor's creditors while he remains in possession and the successors in interest of those creditors, and as against any person on whom the transferor's estate devolves in trust for the benefit of others than the transferor and as against purchasers or encumbrancers in good faith subsequent to the transfer.

Appellants point out that "things in action" [choses in action] are an exception to the section, and undertake to bring the term "promissory note" within the exception. But the terms of the section are so definite that any exception would need to be very clear and specific. We have examined the cases cited on this point in appellants' Reply Brief, but they do not seem to be applicable in the circumstances detailed in the instant case.

The judgment of the district court is affirmed.

DUNIWAY, Circuit Judge (concurring):

I concur. The agreement does not assign a present interest in the note or the obligation that it represents. The pertinent provision is paragraph 3 of the three-way agreement.[1] The assignment is only of "such amounts payable under said obligation as Kent-Reese Enterprises, Inc. may become obligated to pay," and the purported assignment of this uncertain and contingent amount is "subject to the condition subsequent that any such loss or liability occur, the assignment then to become finally effective and in force." The phrase "condition subsequent" is obviously erroneous. The legal effect of the language of the paragraph is to impose a condition precedent, because it is expressly stated as a condition that "such loss or liability occur," and the assignment is "then to become finally effective and in force." The ascertainment of the amount, as well as the occurrence, of the loss or liability, and therefore the effectiveness of the assignment, were within four months of the bankruptcy.

ELY, Circuit Judge (concurring):

While I am compelled to agree with the result that is reached, I discount the force of some of the considerations which my Brothers have emphasized.

The fact that Douglass and Reese were officers of both Kent-Reese and Big Boy iʋ irrelevant. There is no suggestion that either was guilty of actual fraud and, as noted in the principal opinion, "Neither side has questioned their good faith." With others involved, and pursuant to competent legal advice, they entered into an open, good faith arrangement by which there was an attempt to create a secured, immediately effective right.

The agreement was not recorded, and in none of its provisions can there be seen any indication of intention to assign the obligation itself. Rather it was the note evidencing the obligation of Kent-Reese to Big Boy which was the intended security. For this reason I cannot agree with my Brother Duniway that paragraph 3 of the agreement is the "pertinent provision." Under the language of that paragraph nothing was assigned to the individual appellants. There was only the "assignment" to *Kent-Reese* of the right to offset, against its obligation to Big Boy, any amounts which it might be required to pay to Messrs. Douglass and Reese under the terms of the guaranty. The guaranty is contained in paragraph 2 of the agreement, which reads,

> "In consideration of the above, KENT-REESE ENTERPRISES, INC. hereby guarantees to RAYMOND DOUGLASS and/or JOAN DOUGLASS and/or ROBERT REESE the payment in full by BIG BOY MARKETS, INC., of the sums set forth above."

This is the provision under which the appellants obtained whatever rights they had. As I see it, paragraph 3 neither adds nor detracts, for it merely states the obvious, that Kent-Reese would have no right to a reduction in the amount of its debt to Big Boy by virtue of its obligation under the guaranty agreement unless and until Kent-Reese should suffer financial detriment by being required to comply with its agreement. In determining whether there was a "trans-

---

1. "BIG BOY MARKETS, INC., in consideration of the foregoing, agrees to hold KENT-REESE ENTERPRISES, INC., free and harmless from any loss or liability under the above agreement and as security therefor does hereby grant to KENT-REESE ENTERPRISES, INC., the right to a credit upon its PROMISSORY NOTE obligation evidenced by the May 1, 1959, promissory note in the sum of Fifty-four Thousand ($54,000.00) Dollars, hereby assigning to KENT-REESE ENTERPRISES, INC., such amounts payable under said obligation as KENT-REESE ENTERPRISES, INC., may become obligated to pay to RAYMOND DOUGLASS and/or JOAN DOUGLASS and/or ROBERT REESE by reason of its guarantee set forth above, this assignment being subject to the condition subsequent that any such loss or liability occur, the assignment then to become finally effective and in force."

-fer of property" which was "perfected" on November 1, 1959, the whole agreement must be considered, but the provision of paragraph 2 is that which is especially relevant.

Since there was no valid assignment of the Kent-Reese debt, the agreement did not provide Douglass and Reese with a fixed security unless it effected, under California law, a valid pledge of the note. This it did not do, as the record does not indicate that possession of the note was surrendered by Big Boy, the payee, to those who might have become pledgees. A California statute, in force at the time of the agreement, expressly provided that a valid pledge could not be accomplished without physical delivery of the pledged property to the pledgee or to a pledgeholder. Cal.Civ.Code § 2988 (Repealed. Stats. 1963, c. 819, p. 1997 § 2). Compare Ladd v. Myers, 4 Cal.App. 352, 87 P. 1110 (1906); Salomon v. Ellis, 34 Cal.App.2d 672, 94 P.2d 393 (1939).