(No. 14066.—Reversed and remanded.)
LUTHY & CO., Appellee, *vs.* HENRY C. PARADIS *et al.*
Appellants.

*Opinion filed October 22, 1921.*

1. EVIDENCE—*testimony of adverse party called as witness must be taken as true in absence of countervailing evidence.* While a complainant is not bound by the testimony of the defendant, whom he calls as his witness, and may show the truth by any competent testimony even in direct contradiction of the defendant's testimony, yet he cannot call in question such witness' credibility, and that part of the testimony which makes in favor of the witness must be considered as well as that against him and must be taken as true if there is no countervailing testimony.

2. CREDITORS' BILLS—*no fraud is presumed where a husband makes deeds in settlement of indebtedness to wife.* While a husband who makes a voluntary conveyance to his wife and afterward becomes insolvent must disprove the implication of fraud as to creditors, yet he may deal with his wife or relatives in business matters and protect them by conveyances in satisfaction of existing indebtedness if done in good faith, as relationship does not, of itself, presuppose fraud or show the absence of a *bona fide* debt.

3. SAME—*rule where defendant's deeds to his wife purport to be for a consideration.* In a creditor's bill proceeding to set aside the defendant's deeds to his wife, which purport to be for a valuable consideration, the complainant must introduce evidence that there was no consideration for the deeds before the defendant can be required to introduce evidence to disprove fraud, as the burden is upon the complainant to show that the transaction was fraudulent and that the conveyances were void.

4. SAME—*what testimony is hearsay as against the defendant.* In a creditor's bill proceeding to set aside the defendant's deeds to his wife, testimony of an attorney that the notary public told him one of the deeds was sent away to be recorded immediately after it was acknowledged is hearsay as against the defendant and is incompetent.

5. SAME—*rule where void sale of personal property to wife is set aside—execution.* Where personal property, the subject of a void sale from husband to wife, is by their act placed beyond reach of legal process, a prior judgment creditor is entitled to recover its value from the wife if the husband is insolvent; but it is error to authorize an execution against her property for more than the evidence shows such value to be.

6. SAME—*when sale of personal property must comply with section 9 of Husband and Wife act.*  A sale of personal property by a debtor to his wife, with whom he is living, is void as to creditors unless the transaction complies with section 9 of the Husband and Wife act, which requires the transfer to be acknowledged and recorded the same as a chattel mortgage.

7. SAME—*when sale must comply with Bulk Sales act.*  A sale of personal property from husband to wife which is intended to be a transfer of the merchandise and good will of the husband's business is void as to creditors of the husband where. no attempt is made to comply with section 1 of the Bulk Sales act.

APPEAL from the Circuit Court of Kankakee county; the Hon. ARTHUR W. DESELM, Judge, presiding.

E. P. HARNEY, and A. L. GRANGER, for appellants.

C. M. CLAY BUNTAIN, and W. R. HUNTER, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

On March 10, 1919, Luthy & Co., a corporation, filed a bill in the circuit court of Kankakee county alleging the recovery of a judgment on May 9, 1917, in the circuit court of that county, against Henry C. Paradis for $1881, the issue of an execution and the return of the execution unsatisfied. The bill alleged, among other things, that Paradis on July 29, 1914, being indebted to the complainant, made his promissory note for $1800, with interest at six per cent, falling due on January 1, 1915; that at the time he was the owner of certain real estate in the city of Momence; that suit was commenced upon the promissory note on September 20, 1916, and after the commencement of the suit Paradis executed a deed to Carrie C. Paradis for his real estate in the city of Momence, which on its face bears date December 13, 1912, and was filed for record on September 30, 1916; that Carrie C. Paradis paid no consideration for the transfer and Henry C. Paradis received none but the conveyance was made fraudulently,

·for the purpose of hindering and delaying the complainant; that on October 2, 1916, Paradis made a warranty deed, which was filed for record on the same day, conveying to Carrie C. Paradis the same premises, but that there was no consideration for such conveyance and that it was made for the purpose of hindering and delaying the complainant. The bill further alleged that Paradis was engaged in the sale of agricultural implements at wholesale and retail in the city of Momence, and that he made a pretended sale of his personal property and business to his wife, Carrie C. Paradis, without consideration, that he might conduct his business in the name of his wife and thereby defeat his creditors. The bill sought to have the two deeds and the sale of the personal property set aside. Answers were filed and the cause was heard in open court. The court rendered a decree setting aside the deeds and the sale of the personal property, authorizing the sheriff to levy upon and sell all the real estate in satisfaction of the judgment, and, if the proceeds of such sale were not sufficient to pay the judgment, authorizing execution against the property of Carrie C. Paradis to the amount of $1321.50. The defendants have appealed from this decree.

The complainant, to establish the allegations of its bill, offered the defendants as witnesses and examined them in regard to the transaction. From their testimony it appears that Henry C. Paradis was the postmaster in Momence from 1903 to 1913; that his wife, to whom he had been married in 1882, was the daughter of L. B. Clark, president of the Momence State and Savings Bank; that upon her marriage she had been given $1000 by her father and a like sum by her mother and for a year and a half before had been earning money as a school teacher. From 1903 to 1913 she worked in the post-office at a salary of $60 a month, and she was the owner of a farm of 120 acres worth $100 an acre, a home in Momence worth $8000, and seven other houses, which she rented. She began to lend money

to her husband immediately after their marriage, the loans being evidenced by notes which he gave her. On September 23, 1911, as evidence of his indebtedness to her, he executed two promissory notes of $2000 each and one for $450, and to secure them executed a mortgage on a part of the property in controversy here. On December 13, 1912, he executed a quit-claim deed conveying the real estate in controversy to his wife for an express consideration of $4728, which was the amount of the notes secured by the mortgage, with interest. His brother, Albert, was in the agricultural and implement business in Momence and Henry had become surety on his notes. On December 15, 1912, Henry took over the implement business of Albert and conducted it afterwards until October 2, 1916, when he executed a bill of sale conveying the good will and part of the stock of the business to his wife, intending to convey it all for a consideration of $200, which she paid him. This bill of sale was recorded on March 2, 1917. At the time the quit-claim deed was executed it was agreed that Henry should be allowed to redeem the premises within a year and that the deed should not be recorded for that length of time.

The appellee claims that it is not bound by the testimony of the appellants though it called them as its witnesses but that the truth may be shown by any competent testimony, even in direct contradiction of what the appellants, as witnesses for the appellee, may have testified to. There is no doubt that this is the law. The trouble about its application to this case is that there is no other competent testimony contradicting the testimony of the appellants. The fact that they may have been impeached by inconsistencies in their testimony or contradictory statements will not supply the lack of proof of the essential elements of the complainant's case. A party who calls his adversary as a witness cannot call in question the latter's credibility. That part of his testimony which makes in favor of the witness must be considered as well as that

against him, and if there is no countervailing testimony it must be taken as true. *Sawyer* v. *Moyer,* 109 Ill. 461; *Bowman* v. *Ash,* 143 id. 649; *American Hoist and Derrick Co.* v. *Hall,* 208 id. 597.

The appellants testified that after the date of the quit-claim deed Mrs. Paradis paid the taxes on the property and collected the rents for it. In the year 1914 a fire occurred which destroyed the building in which Henry was conducting the business and $800 insurance was collected. Mrs. Paradis testified it was paid to her, and Henry testified it was paid to him and he paid it out on his debts. He wrote nine letters to the complainant between February 13, 1913, and August 14, 1916, asking further time in which to pay his debt to it, giving excuses for not paying and promising to pay. One excuse was that he had a large amount of taxes to pay. In one letter he stated that he had a $4500 fire with only $800 insurance, and that was what was making him hard up. A statement of his financial condition made to the Momence State and Savings Bank was also introduced in evidence, in which he claimed to own real estate valued at $23,000, subject to mortgages amounting to $10,500. The appellee claims that these letters and statements are so inconsistent with the testimony of Paradis as to render it unworthy of belief. Assuming that the complainant having offered him as a witness is entitled to impeach his credibility and to show that he is unworthy of belief, the effect of doing so would be only to eliminate his testimony from consideration. The statements contained in his letters and his financial statement are not competent evidence against his wife. They were not made under oath or subject to cross-examination, and could have no effect, so far as she was concerned, to establish the truth of the statements. They could have no other effect than to impeach his credibility. They do not affect the testimony of his wife, who is not shown to have authorized them or had any knowledge of them.

Mrs. Paradis testified that she did not get any rent from the building occupied by her husband and afterward said he paid her $30 a month. She testified that she did not know Henry owed anyone but herself, but later admitted she knew of an indebtedness of $6500, which was secured by a prior mortgage on the premises; that she paid taxes, made repairs and collected the insurance money after the fire, directly contrary to the statements of her husband in the letters and financial statement which have been mentioned. She claimed that she owned the property, yet she did not know the names of her tenants or the amounts of rent they paid. She testified that she assumed the mortgages on the real estate, though such assumption was not mentioned in the deeds. If it is admitted that her testimony is impeached by its inconsistencies and contradictions, yet these inconsistencies and contradictions had no force to prove the allegations of fraud which were contained in the bill of complaint, and the allegations of the bill are left without any support in the evidence except such inferences as may arise from the withholding of the quit-claim deed from the record until suit was brought by the appellee on its note; the payment of taxes through Henry C. Paradis, which is shown by the tax books, though both husband and wife testified that the taxes were paid by the husband for the wife; the execution of the warranty deed of October 2, 1916, and the execution of the mortgage in 1911. There is nothing in all this evidence to establish the fraud charged in the bill, unless the mere fact of the relation of husband and wife raises a presumption of fraud in transactions between them which casts upon them the burden of proof to overcome it. Where a husband makes a voluntary conveyance to his wife and afterward becomes insolvent, the burden of proof is on him to disprove the implication of fraud as to creditors at the time of making the conveyance. (*Dillman v. Nadelhoffer,* 162 Ill. 625.) A husband may, however, deal with his wife or relatives in business matters and

299—25

protect them by conveyances in satisfaction of existing indebtedness if done in good faith. Relationship is merely a circumstance that may excite suspicion, but will not, of itself, amount to proof of fraud or show the absence of a *bona fide* debt. *(Hughes* v. *Noyes,* 171 Ill. 575; *American Hoist and Derrick Co.* v. *Hall, supra; Merchants Nat. Bank* v. *Lyon,* 185 Ill. 343; *Ayers Nat. Bank* v. *Barber,* 287 id. 182.) There was no presumption of fraud ·which required the defendants to introduce proof to overcome it. The mortgage and the deeds purported to be for a valuable consideration. Before the burden to disprove fraud could be cast upon the defendants it was necessary for the complainant to introduce evidence that there was no valuable consideration. There is no such evidence in the record. While the court will carefully scrutinize transactions between husband and wife, it cannot relieve the complainant of the burden of producing evidence tending to show that the transaction was fraudulent or that the conveyance was void. *Bowman* v. *Ash, supra; Sawyer* v. *Moyer, supra.*

John A. Mayhew, a lawyer of Momence, who represented the appellee in the suit brought on the $1800 note, testified that before the suit was brought he investigated the state of the record title to the real estate and after bringing suit talked with J. W. Tower, the notary public who took the acknowledgment of the quit-claim deed, and that Tower told him that the deed was sent to Kankakee to be recorded immediately after· it was acknowledged. Tower denied having made the statement, but, in any event, this statement was not evidence against the defendants, as to whom it was mere hearsay.

The court erred in setting aside the mortgage and deeds to the real estate.

A bill of sale of the personal property was prepared by J. W. Tower, who was a notary public and justice of the peace. Paradis produced on the trial an invoice of the goods, which he testified he had prepared as the goods

intended to be conveyed. The original invoice, the bill of sale and the justice of the peace docket on which the bill of sale was entered have been certified to us and no two of them agree. The invoice listed all the articles named in the bill of sale, but on the docket appeared four Acme binders and an Acme mower which appeared neither in the invoice nor the bill of sale. The bill of sale omitted some articles which appeared in the invoice and some which also appeared on the docket and the docket contained a number of items that did not appear in the bill of sale. All the items mentioned in the bill of sale appear on the docket, and some articles invoiced appear neither on the docket nor bill of sale. The only apparent explanation of these discrepancies is that Tower used the invoice both in drawing the bill of sale and in making his record and in neither case copied it correctly. The record of the bill of sale on March 2, 1917, shows that the certificate of acknowledgment was signed, "J. W. Tower, Notary Public," but the original document, which has been certified to us, now shows following the title, "Notary Public," the words, "and Justice of the Peace," apparently written in a different ink. Tower testified that these last five words were written at the time the bill of sale was drawn. They also appear on the docket in different ink from the rest of the page, and there is a strong inference that in both cases they were added after March 2, 1917.

The bill of sale failed to comply with section 9 of chapter 68 of the Revised Statutes, which provides that "where husband and wife shall be living together, no transfer or conveyance of goods and chattels between such husband and wife shall be valid as against the rights and interests of any third person, unless such transfer or conveyance be in writing, and be acknowledged and recorded in the same manner as chattel mortgages are required to be acknowledged and recorded by the laws of this State, in cases where the

possession of the property is to remain with the mortgagor;" and sections 2 and 3 of chapter 95 of the Revised Statutes, which provide that such chattel mortgages shall be acknowledged before a justice of the peace and an entry made by him in his docket showing a description of the property as in the mortgage. The bill of sale purported to be acknowledged before a notary public, and the docket entry failed to describe the property as it was described in the bill of sale. No effort was made to comply with section 1 of the Bulk Sales act. (Laws of 1913, p. 258.) The sale was intended to be a sale of the merchandise and good will of Henry C. Paradis' business. The evidence shows that the items conveyed, most of which had been through the fire of 1914, were worth $200. This did not include four Acme binders and an Acme mower. With regard to these, Paradis testified that if there were any turned over they had been through the fire and consequently had no value except as junk. This was all the evidence as to the value of the articles.

Appellee claims that eight Litchfield spreaders which were invoiced as junk had an actual value of $125 each. This claim is based on testimony that in 1917 Morgan Madsen, a farmer, bought a Litchfield spreader of Paradis and paid $125 for it and there was another spreader of the same kind there also. The place where the spreader was located was in the barn of Charles Wiltse, who also was a farmer. There was no evidence connecting the two new spreaders with the eight listed as junk. There is evidence that certain witnesses saw no such spreaders in the debris after the fire, but such evidence is of no value. There is no evidence to show what goods were turned over by Paradis to his wife or what their value was except his testimony. The decree was therefore erroneous in awarding execution against her for $1321.50.

The sale of the personal property was void as against the appellee. The property by the act of the appellants has been

placed beyond the reach of legal process. It was equitable that they should respond to the appellee for its value.

The judgment will be reversed and the cause will be remanded to the circuit court, with directions to enter a decree dismissing the bill as to the real estate for want of equity and ordering Carrie C. Paradis to pay to the complainant $200 within five days of the entry of the decree and in default of such payment awarding execution for that amount, and making such order in regard to the costs as may be equitable. *Reversed and remanded, with directions.*