## In re LE MAIRE COSMETIC CO., Inc.

## GALSWORTHY, Inc., v. KENNEDY.

### No. 9692.

United States Court of Appeals
Seventh Circuit.

May 16, 1949.

Abraham W. Brussell, Milton I. Shadur, Chicago, Ill., for appellant.

Robert E. Barrett, Wendell H. Shanner, Zachary D. Ford, Jr., Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and MINTON and DUFFY, Circuit Judges.

MAJOR, Chief Judge.

On June 24, 1946, Le Maire Cosmetic Co., Inc., an Illinois corporation (the debtor corporation) filed a petition in the District Court, praying that proceedings be had under Chapter X of the Bankruptcy Act, 11 U.S.C.A. §§ 501–676. On the same date, James E. Kennedy (appellee) was appointed Trustee and a preliminary order was entered enjoining and restraining Galsworthy, Inc. (appellant) from conducting a chattel mortgage foreclosure sale of machinery and equipment, of which the debtor corporation was alleged to be the owner. On June 28, 1946, Galsworthy filed a special and limited appearance, with a petition praying that as to it the injunction order be dissolved. On September 26, 1946, the District Court referred to a Special Master Galsworthy's petition to dissolve the injunction order. On the issue thus referred, numerous hearings were held. On February 10, 1947, the Trustee filed an amended answer which, among other matters, prayed for an order requiring Galsworthy to turn over to the Trustee $11,000, which it had received in part payment upon its chattel mortgage. On February 14, 1947, Galsworthy moved that the amended answer be stricken on the ground that the bankruptcy court lacked jurisdiction to order such a turn-over in a summary proceeding. This motion was denied by the court.

On November 6, 1947, the Special Master filed his report with his findings, and recommended that (1) Galsworthy's petition to dissolve the injunction be denied, (2) the payment of $11,000 to Galsworthy be found to constitute a preferential payment made

on account of an antecedent debt by the debtor while insolvent and within four months before the filing by the debtor of its petition under Chapter X of the Bankruptcy Act, as amended, the effect of which payment would be to enable Galsworthy to obtain a greater percentage of its debt than other creditors of the same class, and (3) Galsworthy be directed to turn over the $11,000 to the Trustee.

Galsworthy filed a petition to review the report and again asserted lack of jurisdiction in the District Court to enter an order directing the turn-over of the $11,-000. The District Court, on June 3, 1948, entered an order adopting the report of the Special Master, including his findings of fact and conclusions of law. The court in the same order denied the petition of Galsworthy to dissolve the injunctional order theretofore entered on June 24, 1946, dismissed its petition and awarded the Trustee recovery against Galsworthy in the sum of $11,000. From the court's order of June 3, 1948, Galsworthy has appealed.

Prior to a statement and discussion of the issues raised here, it seems appropriate to make a brief statement of the facts, in the main undisputed. Galsworthy is a New Jersey corporation, engaged in the business of selling alcohol and derivative products to wholesalers and manufacturers. Lester F. Martin, an individual doing business under the trade name and style of "LeMaire Cosmetic Co., not incorporated" (referred to as the individual proprietorship), manufactured and sold cosmetics in Elmhurst, Illinois. Martin purchased alcohol from Galsworthy which he used in the manufacture of cosmetics, including perfumes. His business dealings with Galsworthy were carried on over a period of two years prior to the spring of 1946. In November, 1945, Martin was indebted to Galsworthy in the amount of $30,200. Galsworthy instituted a suit against Martin in the United States District Court for the Northern District of Illinois, Eastern Division, which culminated in a judgment in favor of the former and against the latter, which judgment was entered on April 9, 1946, in the sum of $29,903.16. An execution on this judgment was returned unsatisfied at the request of Galsworthy's attorneys. Garnishment proceedings were instituted which tied up several of Martin's accounts receivable as well as his funds in banks, making it impossible for him to carry on his business.

In the early part of May, Martin employed Lewis W. Schlifkin as his attorney, advising him of the judgment and garnishment proceedings. Schlifkin conferred with Mayer, Meyer, Austrian & Platt, Galsworthy's legal representative in Chicago. An arrangement was worked out for Martin to give a chattel mortgage on all the furniture, fixtures and equipment of the LeMaire Cosmetic Co., on consideration that Galsworthy refrain from proceeding on its judgment and release its garnishments. Accordingly, on May 10, 1946, Martin executed and acknowledged before a Notary Public the chattel mortgage given to secure the payment of his promissory note in the sum of $30,094, both the note and mortgage being signed by Martin individually and as sole proprietor of LeMaire Cosmetic Co. On the same date, the garnishment suits on the judgment against Martin were dismissed by stipulation. Also on the same date, a payment of $7,500 was made on the note, and on June 9, 1946, another payment of $3,500 was made. These payments were made to Galsworthy's legal representative and endorsed on the note.

On January 8, 1946, Martin organized the debtor corporation, of which he was sole stockholder and president. Neither the public in general nor firms doing business with the individual proprietorship were notified of the organization or existence of the corporation. The letterheads of the individual proprietorship continued in use on all correspondence until May 15, 1946, and there is evidence, apparently undisputed, that the officers of Galsworthy were unaware of the existence of the debtor corporation until advised by their attorneys on or about the date of the execution of the chattel mortgage. On March 29, 1946, Martin, as he had on numerous previous occasions, applied for and received from the Alcohol Tax Unit of the United States Treasury Department an alcohol permit in his name as sole owner of the individual proprietorship. It should

also be noted that the corporation had on February 4, 1946 applied for a similar permit, which was not issued to it until May 1, 1946. The time when the corporation commenced to do business is a matter of dispute. The Master found only that the business was operated as "an individual proprietorship and not as a corporation up to May 1, 1946."

▮ The ultimate legal issue for decision is whether the chattel mortgage in favor of Galsworthy and the payments to it in the amount of $11,000 were transfers by the debtor corporation constituting voidable preferences under Sec. 60 of the Bankruptcy Act, 11 U.S.C.A. § 96. It is obvious, so we think, that the chattel mortgage did not constitute a voidable preference unless the property described therein at the time of the execution of the mortgage was that of the debtor corporation, and it is equally obvious that the $11,000 paid to Galsworthy did not constitute a voidable preference unless such payment was made by the debtor corporation and out of its funds.

▮ We need not cite or discuss the cases cited by the Trustee in support of the rule that the findings of a Special Master, affirmed and concurred in by the District Court, are presumably correct and should not be disturbed upon appeal except on a showing of clear mistake. We recognize the rule but think, for reasons subsequently disclosed, that it is of little benefit to the Trustee. A more pertinent rule is that the burden of alleging and proving every element of a voidable preference rests upon the Trustee. Trautwein v. Mandel, 8 Cir., 127 F.2d 567, 569; Canright v. General Finance Corp., 7 Cir., 123 F.2d 98, 99; First National Bank of Negaunee v. Fox, 6 Cir., 111 F.2d 810, 813.

▮ The Master made no clear-cut finding as to whether the property covered by the chattel mortgage was owned by the corporate debtor or by the individual proprietorship, or whether the $11,000 was paid from the funds of the corporate debtor or those of the individual proprietorship. The result reached by the Special Master and approved by the court appears to rest upon the basic fallacy that the corporation and the individual proprietorship were a single entity. As illustrative, the Master found "that Lester F. Martin was the sole owner of LeMaire Cosmetic Company, not inc., and was the sole stockholder of the LeMaire Cosmetic Company, Inc. * * * and that the LeMaire Cosmetic Company, Inc., to all intents and purposes was Lester F. Martin himself carrying on the business operated formerly as a sole proprietorship and the corporation was a mere continuation of the same business; that there was no fundamental change in the business, the old creditors are now the creditors of the new corporation; that the corporation in turn has a right to all the rights of the proprietorship." This premise might be relevant to an issue between Martin, the individual, and the corporation, but we think it is of no consequence as between either the corporation or Martin and a third party, such as Galsworthy in the instant matter. Especially is this so where such third party was without notice or knowledge of the relation existing between Martin and the corporation.

No question is raised either by the Master's findings or by the proof but that Galsworthy extended credit to Martin as an individual long before the corporation was organized, and that at all times subsequently it relied upon him to discharge his obligation to it, and that this obligation was evidenced by the note and chattel mortgage which he executed in favor of Galsworthy on May 10, 1946. In fact, the Master recognizes this situation by finding "That the chattel mortgage dated May 10, 1946 from Lester F. Martin, individually and as sole proprietor of LeMaire Cosmetic Company, was given in settlement of a debt arising on September 25, 1945 on which judgment was rendered in favor of Galsworthy, Inc., on April 9, 1946," and that the chattel mortgage "was made within four months of the petition for reorganization in bankruptcy under Chapter X filed herein." There is no finding and no basis for such that the mortgage was given to secure a debt owed to Galsworthy by the corporation but, relying on the fallacious premise which we have mentioned, the Master treats.

the chattel mortgage as though it had been given by the corporate debtor upon property owned by it.

There is no finding that the corporate debtor was the owner of the property covered by the chattel mortgage either at the time of its execution or at any other time. The nearest approach to such a finding is "that books of entry were made closing the individual proprietorship business as of January 1, 1946 and opening entries were made transferring the assets and liabilities to the Corporation entity." The "books of entry" referred to were not original and, according to the testimony of the witness who made the entries, they were not made until some time subsequent to May 1, and perhaps not until after May 10, 1946, the date of the execution of the chattel mortgage. The witness was uncertain whether he was employed by Martin or the corporation during the period between January 1 and May 10, 1946, and he had no recollection of receiving payment of any wages from the corporation. He also stated that the corporation had no bank account. There is no evidence of a bill of sale or any other document transferring the property from Martin to the corporation. Also, Martin testified that he was the owner of the property covered by the chattel mortgage, and it is undisputed that he so represented to Galsworthy's attorneys at the time the chattel mortgage was executed, when they learned for the first time of the corporate existence. In any event, the Master found "that Lester F. Martin operated the LeMaire Cosmetic Company as an individual proprietorship and not as a corporation up to May 1, 1946." It is significant that the Master makes no finding as to how the business was operated between May 1 and May 10, although Martin testified that he was operating it as an individual on May 10. There is some evidence, greatly relied upon by the Trustee, which shows that Martin announced to parties other than Galsworthy that the business was being taken over by the corporation on May 1. Assuming that such was the case, we do not think it constitutes any proof that the corporation became the owner of the property

subsequently mortgaged. Moreover, if we assume that the meager and dubious proof discloses a transfer of the property as between Martin and the corporation, we think such transfer could not be binding upon Galsworthy, who was without notice or knowledge.

As we have shown, there was no finding and no proof which would justify such a finding that the chattel mortgaged property was owned by the debtor corporation at the time the mortgage was executed. But even if there were such proof, it would be of no benefit to the Trustee's position as the asserted transfer from the individual proprietorship to the corporation was as to Galsworthy void because made without compliance with the Illinois Bulk Sales Act, Ill.Rev.Stat. 1947, c. 121½, § 78 et seq.

Sec. 78 provides: "The sale, transfer, or assignment in bulk of the major part or the whole of a stock of merchandise, or merchandise and fixtures or other goods and chattels of the vendor's business, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the vendor's business is fraudulent and void as against the creditors of the vendor * * *."

The section continues by prescribing in detail the terms and conditions upon which such a transfer may be made so as to be binding upon creditors.

Sec. 80 provides: "Vendors and vendees under this act shall include corporations, associations, co-partnerships and individuals, who shall be party to any sale, transfer or assignment, of goods and chattels in bulk."

As to this issue, the Master found: "The evidence further establishes that the Bulk Sales Law has no application in this matter as alleged by the petitioner; that this was a transfer of the whole business, equipment, machinery and stock to a corporation in exchange for all the capital stock of the corporation, the creditors of the individual proprietorship becoming the creditors of the corporation."

Whether this be labeled as a finding or conclusion of law, it is, in our view, clearly erroneous. Such a result must

come from a failure to recognize the individual proprietorship and the corporation as separate entities.

We think there is no escape from the conclusion that the asserted transfer comes squarely within the terms of this statute and is void as to creditors. It is made thus by the express terms of the statute and it has been so held by numerous Illinois courts. Coon v. Doss, 361 Ill. 515, 520, 198 N.E. 341, 102 A.L.R. 561; Luthy & Co. v. Paradis, 299 Ill. 380, 388, 132 N.E. 556; Wells v. Lindberg, 299 Ill.App. 624, 20 N.E.2d 363.

Thus, the alleged transfer of the property covered by the chattel mortgage from the individual proprietorship to the corporation, even though made, was void and of no effect insofar as it affected the rights of Galsworthy, which occupies precisely the same position as though no transfer had been made or attempted. It follows, so we think, that it obtained no voidable preference by reason of the chattel mortgage transaction.

The situation relative to the payment to Galsworthy in the amount of $11,000 may be disposed of in brief fashion. The record shows beyond controversy that this payment was made by Martin on his own personal obligation and that it was treated and so considered by the parties to the transaction. True, the Master in finding that the $11,000 payment was preferential referred to the fact that it was received by Galsworthy "from the debtor herein on May 10, 1946." In our view, there is not a scintilla of evidence that the payment was received from the debtor. More than that, it is evident that the Master's reference in this respect was again due to a failure to make a distinction between the individual and corporate entity, as is shown by his recommendation "that an order be entered finding that the payment received by Galsworthy, Inc., from Lester F. Martin, doing business as LeMaire Cosmetic Company * * * was a preferential payment, made on account of an antecedent debt made by such debtor * * *." Thus the Master recognizes that the payments were made by the individual proprietorship, but at the same time concludes that the payments were made on account of a debt owed by the corporation. As already shown, the corporation was not a debtor of Galsworthy at the time of the execution of the chattel mortgage or at any other time. Such being the case, there is no basis for a holding that the payment made by Martin was on account of a debt owed by the corporate debtor, and thus such payment by Martin was not a transfer to Galsworthy by the debtor corporation. It follows that there was no basis for the turn-over order directed at Galsworthy.

In view of what we have said, we find it unnecessary to discuss other issues which have been raised. The order appealed from is reversed and remanded with directions that the injunction order as it relates to Galsworthy be dissolved and that the Trustee's petition praying for an order requiring Galsworthy to turn over to the Trustee $11,000, be denied.