*889
 
 BREYER, Circuit Judge.
 

 A Bank makes a large loan to a corporation. A corporate shareholder guarantees repayment of this Basic Loan. At the same time the guarantor himself owes money to the corporation — a debt in which the Bank has a secured interest as partial collateral for its Basic Loan. The corporation goes bankrupt. The guarantor just before bankruptcy pays a sum of money to the Bank— money which he claims at one and the same time reduces his debt to the corporation and also reduces his obligation as guarantor of the Basic Loan. If so, has he received a voidable “preference” under section 60(a) of the Bankruptcy Act of 1898, 11 U.S.C. § 96(a)? Has property belonging to the corporation been transferred in a manner that benefitted the guarantor at the expense of other creditors of the same class? The district court believed that such a preference was created. We disagree and reverse its decision.
 

 I.
 

 The facts on this appeal are not in dispute. The defendants, Kapela and Broven-ick, were sole shareholders of Amesbury Woodcraft, Inc. In early 1976 Amesbury borrowed $100,000 (the Basic Loan) from Century Bank and Trust Company, Somer-ville, Massachusetts. The Bank obtained a chattel mortgage in virtually all of Ames-bury’s assets as security. The mortgage included, among other things, all “notes, bills ... general intangibles ... and all other debts, obligations and liabilities in whatever form ... whether now existing or hereafter arising . . .. ” Amesbury also executed a loan and security agreement giving the Bank a secured interest in, among other things, all Amesbury’s “rights to the payment of money, now existing or hereafter arising . . . . ” And, the Bank filed an appropriate financing statement on March 9,1976, noting its secured interest in this property. Kapela and Brovenick also personally guaranteed the Bank’s Basic Loan to Amesbury.
 

 Between March 22, 1976 and December 27, 1976, Brovenick borrowed money from the corporation. On January 13, 1977, Bro-venick provided the corporation with a promissory note for $24,640 as evidence of this debt. The corporation then assigned the note to the Bank as collateral under its security agreements.
 

 On March 2, 1977, Brovenick sent the Bank a check for $21,540 upon the back of which he wrote, “Pay to the order of Century Bank & Trust Co., assignee of my note of 1/13/77”.
 
 [1]
 
 At the same time, Brovenick (who also supervised the corporate bookkeeping) made accounting entries in the corporation’s books reducing his debt to it by $21,540.
 

 On March 9, 1977, the corporation went bankrupt. The corporation had been insolvent for the preceding four months, and both Kapela and Brovenick knew, or should have known, it.
 

 On August 14, 1977, Samuel Newman, the corporation’s trustee in bankruptcy, brought this suit in order to recover, for the corporation, the money that Brovenick paid to the Bank. He argued that the payment of $21,540 to the Bank (at least when taken together with the transfer of Brovenick’s note from Amesbury to the Bank) constituted a “voidable preference”, for it satisfied each of the Bankruptcy Act’s seven conditions.
 
 [2]
 
 There was:
 

 
 *890
 
 (1) A transfer of the debtor’s property (the note or money, which “belonged” to Amesbury, was transferred to the Bank);
 

 (2) to or for the benefit of a creditor (Brovenick and Kapela, as guarantors of the Basic Loan were “contingent creditors” of Amesbury
 
 [3]
 
 and benefitted as guarantors by a reduction in the amount due on the Basic Loan);
 

 (3) for or on account of an antecedent debt (the Basic Loan);
 

 (4) while insolvent;
 

 (5) and within four months of bankruptcy;
 

 (6) which enabled Brovenick and Kapela to obtain a greater percentage of their debt (the “contingent debt” for repayment of their payment of the guaranty) than other creditors of the same class;
 

 (7) and Kapela and Brovenick had reasonable cause to believe that Amesbury was insolvent.
 

 See Collier on Bankruptcy
 
 § 60.12 (14th ed. 1977). The district court found that each of these classic conditions was indeed met, declared a “voidable preference”, and ordered Kapela and Brovenick jointly to pay $21,500 to the corporation.
 
 [4]
 

 We reverse, however, because we believe (1) that the
 
 payment
 
 of $21,500 was not a transfer of the bankrupt’s property, (2) that the transfer of the
 
 note,
 
 while a transfer of the bankrupt’s property, was not a transfer for antecedent debt, and (3) that the transfers, whether taken separately or together, did not diminish the bankrupt’s estate available to other comparable creditors.
 

 II.
 

 The preference section of the Bankruptcy Act imposes obligations upon a debtor to treat its creditors fairly once the threat of impending bankruptcy becomes apparent. Thus, four months before the filing of a bankruptcy petition, the debtor loses its common law right to prefer one creditor over another. At the same time, the Act recognizes the importance of preferring secured, to unsecured, creditors. The detailed provisions of the Act are written to prevent preferences as among creditors of the same class, while normally allowing secured creditors to obtain, and realize upon, their collateral. Occasionally, conflicts can develop between section 60 of the Bankruptcy Act governing preferences, and Article 9 of the Uniform Commercial Code, relating to secured transactions as, for example, when a lender takes a secured interest in “after acquired” receivables, which do not come into existence until just prior to a bankruptcy.
 
 See Benedict v. Ratner,
 
 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991 (1925).
 
 [5]
 
 
 *891
 
 Yet, it is important to interpret the two statutes in a way that minimizes such conflicts and harmonizes the policies that underlie them.
 

 The threat that the district court’s holding poses to those seeking to give security for credit can best be seen by analyzing this case from the point of view of the Bank, the secured creditor. It seems clear that the Bank held a valid secured interest in Brovenick’s debt to the corporation as partial collateral for its Basic Loan. If so, neither the transfer of the note evidencing that debt to the Bank, nor the subsequent payment of that note, would constitute a preference to the
 
 Bank.
 
 Neither the transfer of the note nor the payment diminished the bankrupt’s estate available to pay other creditors, for the other creditors were never entitled to the Brovenick debt, to the note that evidenced it, or to the funds used to pay the debt. Paying off that debt did not hurt them.
 

 How then could transfer of the note to the Bank or payment of the note have constituted a preference to the
 
 guarantors
 
 ? Granted that the payment helped them by reducing their liability on their guaranty, how did it hurt the corporation’s other creditors? How did it diminish the bankrupt’s estate that would otherwise have been available to pay those other creditors? To find that it did, one would have to hold that, despite the fact that Brovenick’s $24,-000 debt was secured collateral for the Basic Loan, it should have been available to help satisfy other creditors; one would have to hold that the guarantors could not rely upon that debt’s use to reduce their guarantor liability. Rather, they must pay the Bank $100,000 to satisfy the Basic Loan, despite the existence of this other collateral. In other words, one would have to hold that (at least as to some types of collateral) realization by the creditor of the collateral’s value does not relieve the guarantor of his liability under the guaranty. He must still pay it — either to the Bank or to the bankrupt corporation as a voided preference.
 

 Such a holding seems undesirable. It seems unfair to a guarantor, who might, for example, have guaranteed a loan to a corporation because he knew that the corporation held an asset, such as a note, a receivable, or for that matter land or chattels, which when given as security, would protect him from having to pay on the guaranty. Such a holding would make one think twice before guaranteeing loans to corporations that appear to have adequate collateral.
 

 One could avoid this result, while supporting the holding below, only if one held that this is a
 
 special
 
 case — that normally realization on collateral does not create a preference in favor of a Basic Loan’s guarantor, but it does so here because Brovenick is guarantor, originator of the collateral and a major corporation shareholder all in one. Yet, no improper activity by Brovenick is alleged in this court. No reason has been presented as to why the fact that the collateral originates from the guarantor, from the corporation’s owner, or from the owner/guarantor should make a difference. And, we can discern no such reason. Therefore, we believe that realization upon a note legitimately held as collateral by a secured creditor should not create a preference in favor of the guarantor of the creditor’s Basic Loan when it would not create a preference in favor of the creditor.
 

 This result is consistent with the language of the statute. If Brovenick’s note was legitimately held as collateral by the Bank, the subsequent payment of that note
 
 *892
 
 is not a “transfer ... of the property of [the] . . . debtor” — a statutory requisite for a finding of a preference.
 
 [6]
 
 Indeed, there is no such “transfer” whether the payment is made directly to the creditor or given to the corporation, but earmarked for payment to the creditor.
 
 [7]
 
 For that matter, neither does such a transfer “diminish the fund to which creditors of the same class can legally resort for the payment of their debts” — as the courts have held that the preference statute requires.
 
 See Collier on Bankruptcy
 
 § 60.20 (14th ed. 1977) at 859-60 and cases there cited.
 

 Of course, Brovenick’s note was itself transferred to the Bank within the critical four-month period and that note was “property” of the corporate “debtor”. But, that transfer falls outside the preference statute as long as the Bank had a secured interest in the debt that it evidenced. If so, the giving of the note does not constitute a transfer of the debtor’s assets.
 
 See Collier on Bankruptcy
 
 § 547.14 (15th ed. 1979) at 547 — 50;
 
 Collier on Bankruptcy
 
 § 60.13 (14th ed. 1977) at 819 and cases there cited. At worst, it might be viewed as the substitution of a new security (the note) for an old one (the debt that the note evidenced) already in the hands of the bank — a transaction that has repeatedly been held to fall outside the statute’s language: “transfer ... on account of an antecedent debt.”
 
 Sawyer v. Turpin,
 
 91 U.S. 114, 23 L.Ed. 235 (1875).
 
 [8]
 
 Nor would there seem to be any reason to lump the two transactions — note and payment — and treat them as one in the absence of any allegation of fraudulent or improper activity.
 

 This result does not sanction or allow corporate shareholders/guarantors, such as Kapela or Brovenick, to manipulate the corporation’s assets to benefit themselves. If, for example, Brovenick, foreseeing the corporation’s bankruptcy, had taken the corporation’s cash, or any other corporate asset, in which the Bank did not possess a secured interest, and transferred it to the Bank (or transformed it into an asset in which the Bank had a secured interest), Brovenick would have received a preference. The giving of such a corporate asset to the Bank would have benefitted Brovenick at the expense of other general creditors, and, if it took place within the relevant four-month period, Brovenick would have received a voidable preference.
 
 See Citizens National Bank of Gastonia, N. C. v. Lineberger, 45
 
 F.2d 522, 531 (4th Cir. 1930). The transfer of the corporate asset to the Bank would have benefitted Brovenick as a guarantor of the Basic Loan at the expense of other general creditors. Thus, to bring the example closer to home, if Brovenick had taken from the corporation cash, in which the Bank had no secured interest, and replaced it with a debt, in which the Bank had a secured interest, that exchange would have created a preference in Brovenick’s favor as well as the Bank’s — provided it took place within the relevant four-month period and the Bank was not otherwise fully secured. The record before us is ambiguous on this point, for it suggests that some of Brove-nick’s debt to the corporation may have arisen after November 9, 1976, four months prior to Amesbury’s bankruptcy. But, the record is silent as to how that debt was created. Appellant claims that, whatever assets the corporation gave Brovenick when that debt was created, they were assets in which the Bank also held a secured interest; and the Trustee, appellee, does not attack
 
 that
 
 transfer. Thus, we here must assume that there was no such preferential manipulation.
 

 
 *893
 
 Finally, this result is supported by what case law there is on the subject. The cases suggest that the key question when assets are transferred so as to benefit a guarantor is whether those assets would ordinarily have been available to help satisfy the claims of other (general) creditors. Thus, when a bankrupt debtor transfers assets directly to a guarantor of a Basic Loan as security for the “contingent debt” (to the guarantor) that will be created when the guarantor pays to the debtor’s creditor the amount due on the Basic Loan, a preference is created (assuming time limit and other requirements are met). The guarantor cannot keep that security; he must return it to the bankrupt corporation, where it will be used to help satisfy all claims.
 
 National Bank of Newport v. National Herkimer County Bank,
 
 225 U.S. 178, 32 S.Ct. 633, 56 L.Ed. 1042 (1912);
 
 Aulick v. Largent,
 
 295 F.2d 41 (4th Cir. 1961);
 
 Huntington v. Baskerville,
 
 192 F. 813 (8th Cir. 1911);
 
 Collier on Bankruptcy
 
 § 60.17 (14th ed. 1977) at 838. Moreover, when the bankrupt debtor’s assets are transferred to the Basic Loan creditor, the transfer creates a preference in the Basic Loan guarantor,
 
 provided that the creditor did not have a previously secured interest in those assets
 
 (and all other “preference” conditions were met). That is to say, in the absence of the transfer those assets would have been available to meet the claims of other creditors.
 
 Kent-Reese Enterprises, Inc.
 
 v.
 
 Hempy,
 
 378 F.2d 910 (9th Cir. 1967).
 

 However, as
 
 Kent-Reese
 
 makes clear, the result is just the opposite if the creditor of the Basic Loan previously had a secured interest in the assets that were transferred, for then the transfer did not significantly affect other creditors. In
 
 Kent-Reese,
 
 two owners — call them “D” and “R” — loaned money to Big Boy, a corporation that subsequently went bankrupt. Kent-Reese, another corporation, guaranteed repayment of Big Boy’s loan to D and R. Kent-Reese also owed Big Boy $54,000. (Transposed to the facts present here: D and R are equivalent to the Bank; Big Boy is the bankrupt corporation, Amesbury; and Kent-Reese is the guarantor, Brovenick.) Kent-Reese paid D and R $30,000 and reduced its debt to Big Boy by an equivalent amount. The court held that Kent-Reese received a preference
 
 because
 
 D and R did not have a perfected security interest in the $54,000 debt that Kent-Reese owed Big Boy. The entire issue in the case was whether a contract among the parties had created such an interest prior to the critical four-month period. The court held it did not because the
 
 special
 
 contract at issue there did not take effect until “within 4 months of the petition in bankruptcy” and “it could not, on the facts disclosed by the record, be binding on general creditors dealing with Big Boy”.
 
 Kent-Reese Enterprises, Inc. v. Hempy,
 
 378 F.2d at 912. Judge Ely, concurring, made explicit the fact on which the case turns: “Since there was no valid assignment of the Kent-Reese debt, the agreement did not provide [D and R] ... with a fixed security ....”
 
 Kent-Reese Enterprises, Inc. v. Hempy,
 
 378 F.2d at 915. Similarly, the Fourth Circuit in
 
 Citizens Bank of Gastonia, N. C. v. Lineberger, supra,
 
 reached the same result that we reach here, though it treated the issue as one of “set off”.
 
 [9]
 

 See also Collier on Bankruptcy
 
 § 547.18 (15th ed. 1979) at 547-64;
 
 Collier on Bankruptcy
 
 § 60.17 (14th ed. 1977) at 839.
 

 It is conceivable that the Trustee here might have attacked the validity of the Bank’s secured interest in Brovenick’s debt, or in the assets used to create that debt,
 
 *894
 
 perhaps on reasoning similar to that employed in
 
 Benedict v. Ratner, supra.
 
 The issue of when a previously filed security statement perfects an interest in subsequently acquired “floating” property, such as deposits, or cash, or shifting intangibles, is by no means resolved.
 
 See Dubay v. Williams, supra,
 
 and
 
 Grain Merchants v. Union Savings Bank, supra.
 
 Yet, as previously mentioned, that issue has not been raised here. Thus, we treat the Bank’s interest in the relevant assets as having been perfected prior to the four-month period.
 

 Finally, as previously pointed out, we see no need to create a “special” rule here governing only circumstances in which the corporation’s owners are both guarantors and providers of the relevant collateral. If a note given a corporation by an outsider, when used to satisfy the Bank’s Basic Loan, does not create a preference in favor of that Loan’s guarantor, why should it do so when given to the corporation by the guarantor itself? To so hold might make it less likely that guarantors will borrow from the corporations whose debts they guarantee, but what public policy favors this result? To the extent that one is concerned about manipulation of assets by a corporation’s owners, the provisions of the new Bankruptcy Act, extending the time during which preferences can be created from four months to one year (with appropriate knowledge)
 
 [10]
 
 , would seem to deal with the problem.
 

 We conclude that a guarantor does not receive a preference when a debtor uses a corporate asset to reduce the size of a creditor’s loan — provided the asset is one in which the creditor held a perfected secured interest and is not available to general creditors. And, the fact that the asset involved consists of a debt that the guarantor owes the corporation makes no difference. For this reason, the judgment of the district court is
 

 Reversed.
 

 [1]
 

 . The check was, in fact, a check from Kapela to Brovenick, which was then endorsed by Bro-venick to the Bank. Neither the parties nor the district court claims that this fact is significant.
 

 [2]
 

 . Section 60(a) of the Bankruptcy Act of 1898 provides in part:
 

 (1) A preference is a transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.
 

 (2) For the purposes of subdivisions a and b of this section, a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal
 
 *890
 
 or equitable proceedings on a simple contract could become superior to the rights of the transferee. A transfer of real property shall be deemed to have been made or suffered when it became so far perfected that no subsequent bona fide purchase from the debtor could create rights in such property superior to the rights of the transferee. If any transfer of real property is not so perfected against a bona fide purchase, or if any transfer of other property is not so perfected against such liens by legal or equitable proceedings prior to the filing of a petition initiating a proceeding under this Act, it shall be deemed to have been made immediately before the filing of the petition.
 

 II U.S.C. § 96(a). This case arises under the Bankruptcy Act prior to its recent revision.
 

 [3]
 

 .It is well established that guarantors of a loan to a corporation are creditors of the corporation.
 
 See, e. g., Cooper Petroleum Co. v. Hart,
 
 379 F.2d 777 (5th Cir. 1967);
 
 Collier on Bankruptcy
 
 § 60.17 (14th ed. 1977). The theory is that, insofar as the guarantor pays money to the lender on the basis of his guaranty, he obtains a claim against the corporation for reimbursement. He is thus a “contingent creditor” even before payment and he can be bene-fitted by a transfer that reduces the amount he may have to pay on the guaranty.
 

 [4]
 

 . The district court also ordered Brovenick to pay $3,000 to the corporation on the basis of . his note. That Brovenick owes this amount seems undisputed on this appeal.
 

 [5]
 

 . The Supreme Court, in this famous case, feared that making this type of collateral available to secured creditors would be unfair to the general creditors, who may have been unaware of the lien and may have counted on the existence of the future receivables to satisfy their claims. The question of whether a secured creditor, with a perfected security agreement in “after acquired” property can obtain such property ahead of general creditors, when it
 
 *891
 
 comes into existence within four months prior to bankruptcy has provoked lengthy debate, with two courts of appeals “deeming” the property to have been transferred
 
 before
 
 it came into existence,
 
 see DuBay v. Williams,
 
 417 F.2d 1277 (9th Cir. 1969);
 
 Grain Merchants v. Union Savings Bank,
 
 408 F.2d 209 (7th Cir.),
 
 cert. denied,
 
 396 U.S. 827, 90 S.Ct. 75, 24 L.Ed.2d 78 (1969), and an eventual compromise being reached in the new Bankruptcy Act, su-perceding those cases and giving the secured creditors preferential rights in some types of “after acquired” property (inventory and receivables) but not others.
 
 See generally
 
 11 U.S.C. § 547(c);
 
 Collier on Bankruptcy
 
 §§ 547.-03, 547.49[7] (15th ed. 1979); Countryman,
 
 Bankruptcy Preferences
 
 — Current
 
 Law and Proposed Changes,
 
 11 U.C.C.L.J. 95 (1979); Coogan, Hogan and Vagts, IB
 
 Secured Transactions Under the U.C.C.
 
 § 10.03.
 

 [6]
 

 .
 
 Olmstead v. Mass. Trust Co.,
 
 11 F.2d 410 (D.Mass.1926);
 
 Collier on Bankruptcy
 
 § 547.25 (15th ed. 1979);
 
 Collier on Bankruptcy
 
 § 60.26 (14th ed. 1977).
 
 See also In re Le Maire Cosmetic Co.,
 
 174 F.2d 749 (7th Cir. 1949).
 

 [7]
 

 .
 
 Grubb v. General Contract Purchase Corp.,
 
 18 F.Supp. 680, 682 (S.D.N.Y.1937),
 
 aff'd,
 
 94 F.2d 70 (2d Cir. 1938);
 
 Collier on Bankruptcy
 
 § 547.25 (15th ed. 1979) at 547-95;
 
 Collier on Bankruptcy
 
 § 60.26 (14th ed. 1977) at 882-83.
 

 [8]
 

 .See also National Bank of Newport v. National Herkimer County Bank,
 
 225 U.S. 178, 32 S.ct. 633, 56 L.Ed. 1042 (1912);
 
 First National Bank of Clinton v. Julian,
 
 383 F.2d 329 (8th Cir. 1967);
 
 Collier on Bankruptcy
 
 § 547.22 (15th ed. 1979) at 547-87.
 

 [9]
 

 . The
 
 Lineberger
 
 court reasoned that the guarantor’s debt to the corporation was “offset” by the corporation’s debt to the guarantor arising out of the guarantor’s payment on the Basic Loan. One could reason similarly here: Bro-venick’s liability to the Bank as guarantor arose as soon as the corporation defaulted on the Basic Loan — probably well before Brove-nick made his $21,540 payment. Thus, Brove-nick’s obligation to the Bank was immediate, not contingent, and Brovenick was also a creditor of the corporation to the same extent he paid the Bank as guarantor of the corporation’s debt. On
 
 Lineberger’s
 
 theory, Brovenick could offset his $24,000 debt to the corporation by the amount of the corporation’s debt to him. Appellees, however, have raised several objections to the offset theory as applied to this case. Since we do not rest our result upon that theory, we need not discuss those objections.
 

 [10]
 

 . 11 U.S.C. §§ 547(b)(4)(B), 547(c)(5)(A)(ii).